UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEXIS CLARK,

     Plaintiff,

v.                          Case No.:  2:24-cv-692-SPC-NPM

COLLIER COUNTY SHERIFF
KEVIN RAMBOSK, and
MICHAEL PASZTOR, individually
and in his official capacity as a
Deputy for Collier County Sheriff,

     Defendants.

_____/

## OPINION AND ORDER

Before the Court is Defendants Collier County Sheriff Kevin Rambosk and Deputy Michael Pasztor's Motion to Dismiss Complaint. (Doc. 8). Plaintiff Alexis Clark filed a response in opposition (Doc. 12), and Defendants filed a reply (Doc. 20). The Court grants the motion to dismiss to the extent set forth below.

### Background[1]

This civil rights action stems from a traffic stop in September 2022, which resulted in Clark's arrest. Clark was driving home from work when

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Clark. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Deputy Pasztor followed him through his community's security gates, sounded his siren, and initiated a traffic stop in front of Clark's home. Clark opened the door of his vehicle to exit, but Deputy Pasztor pushed the door and prevented him from exiting the vehicle.

Next, Clark alleges:

> Plaintiff advised Defendant PASZTOR that he was going to exit his vehicle. Contrary to what Defendant PASZTOR wrote in his Arrest Affidavit, that "The driver began to contest the reasoning of the stop. Due to the driver's demeanor, he was asked to exit the vehicle to discuss the stop," Defendant PASZTOR told Plaintiff "No you are not." In response, Plaintiff asked if it is illegal to get out of his vehicle. Defendant PASZTOR answered "Would you like to get out?" Plaintiff responded yes that he would like to exit, and was permitted to exit his vehicle. Plaintiff did not contest the reason for the stop.

(Doc. 1 ¶ 15). After Clark exited his vehicle, Deputy Pasztor told him to stand in front of the police cruiser. Clark did. Deputy Pasztor explained that he stopped Clark because of an "illegal, modified exhaust and for 'opening it up on 41.'" (*Id.* ¶ 17). Deputy Pasztor asked Clark for his driver's license and registration and told Clark that if he continued to elevate his voice, he would detain him. Clark retrieved his wallet and asked if it was illegal to raise his voice.

Deputy Pasztor "forcibly . . . grabbed Plaintiff by the wrist." (*Id.* ¶ 25). Clark asked Deputy Pasztor not to touch him. Deputy Pasztor told Clark to face the car, which he did. Deputy Pasztor then handcuffed Clark, placed him

in the back of the patrol car, and drove him to Naples Jail. There, Clark was "booked, humiliated, and placed in a jail cell." (*Id.* ¶ 28). He was booked for obstruction and resisting arrest in violation of Florida Statutes § 320.04(2). Clark hired a lawyer to defend him against the charges, which the State dismissed in March 2023.

In August 2024, Clark brought five claims against Sheriff Rambosk and Deputy Pasztor: (1) state-law false arrest/seizure against Sheriff Rambosk; (2) state-law battery against Sheriff Rambosk; (3) state-law intentional infliction of emotional distress against Deputy Pasztor in his official and individual capacities; (4) false arrest in violation of the Fourth Amendment under 42 U.S.C. § 1983 against Deputy Pasztor in his official and individual capacities; and (5) First Amendment retaliation under § 1983 against Deputy Pasztor in his official and individual capacities.[2] (Doc. 1). Defendants move to dismiss all five claims. (Doc. 8). The Court grants the motion for the reasons stated below.

## Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare

---

[2] Clark does not allege whether the allegations against Sheriff Rambosk are brought against him in his official and/or individual capacity.

"labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Rule 12(b)(6) is read alongside Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997). The rule is not designed to strike inartistic pleadings or provide a more definite statement to answer an apparent ambiguity, and the analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and its attachments. *Id.* (citing 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller)).

However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then a court may consider the documents part of the pleadings for purposes of Rule 12(b)(6)

dismissal and the defendant's attaching such documents to the motion to dismiss does not require conversion of the motion into a motion for summary judgment. *Id.* (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")).

## Analysis

Before reaching the merits, the Court addresses the type of evidence it considers at the motion to dismiss stage. Defendants argue that the Court should consider: (1) Deputy Pasztor's arrest affidavit, which includes his probable cause statement (Doc. 8-1); (2) his body camera footage; and (3) his dashboard camera footage. (Doc. 8 at 4; Doc. 20 at 2). Defendants submitted a flash drive containing the video footage with their reply. (Doc. 20). Defendants explain the video footage as follows. (*Id.* at 2 n.1).[3] Defendants contend the Court may consider this evidence without converting the motion to dismiss into a motion for summary judgment. (*Id.*). For the reasons below, the Court agrees.

---

[3] Deputy Pasztor's body camera footage is labeled "Pasztor – BWC" (stream 0). His patrol car's camera video is labeled "Pasztor – Veh 230." The patrol car video has three views: Stream 0 and Stream 2 are the forward-facing dash camera video, while Stream 3 shows the interactions between the parties at the rear of Deputy Pasztor's patrol car. The Court's references to points on the videos are approximations.

In his response, Clark does not address whether the Court can consider the affidavit. (Doc. 12). And he did not move to file a sur-reply to oppose consideration of the body camera or dashboard camera footage.

"[W]hen resolving a motion to dismiss . . ., a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The Eleventh Circuit has extended the incorporation-by-reference doctrine beyond "written instruments" to include body camera footage. *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024) (noting that *Baker v. City Madison*, 67 F.4th 1268, 1277–78 (11th Cir. 2023), applied the incorporation-by-reference doctrine to police bodycam footage). *Baker* instructs that a court "accept the video's depiction instead of the complaint's account . . . and view the facts in the light depicted by the video." 67 F.4th at 1278 (citations omitted).

A plaintiff need not stipulate that a video is authentic for the district court to properly consider it. *Swinford*, 121 F.4th at 187–88. Rather, "[a]ll that is required is that its authenticity is not challenged." *Id.* at 188 (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

Clark references Deputy Pasztor's arrest affidavit in his complaint and does not argue in his response that the Court should not consider it. (Doc. 1 ¶

15; Doc. 12).  So the Court may consider the affidavit in ruling on the motion to dismiss without converting it to summary judgment.  *Brooks*, 116 F.3d at 1369 ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

Further, the Court can consider the body camera and dashboard camera footage even though Clark does not reference these videos in his complaint. (*See* Doc. 1).  Clark relies on the videos in his response and does not dispute their authenticity.  The videos are central to his claims because they show all relevant conduct.  The traffic stop and arrest took place in broad daylight, so the area depicted in the footage is well-lit.  *See Baker*, 67 F.4th at 1277.  The footage also presents visual and audio depictions of the events that took place. *See id*.  Accordingly, the Court concludes that it can consider Deputy Pasztor's body camera and dashboard camera footage without converting the motion to dismiss to a motion for summary judgment.  *See Johnson*, 107 F.4th at 1301 (district court properly considered the body camera and dashcam videos in ruling on Rule 12(c) motion for judgment on the pleadings even though the plaintiff did not refer to the videos in the complaint).

Next, the Court outlines the legal framework for probable cause. "Section 1983 creates a private cause of action for deprivations of federal rights by persons acting under color of state law." *Laster v. City of Tampa Police Dept.*, 575 F. App'x 869, 872 (11th Cir. 2014) (citing 42 U.S.C. § 1983). An arrest or detention qualifies as a "seizure" of a person under the Fourth Amendment. *Manuel v. City of Joliet, Ill.,* 580 U.S. 357, 366–67 (2017); *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011).

The reasonableness of an arrest and detention under the Fourth Amendment "turns on the presence or absence of probable cause." *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009) (citation omitted). "Actual probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Davis v. City of Apopka*, 356 F. Supp. 3d 1366, 1375 (M.D. Fla. 2018) (citations omitted) (cleaned up), *aff'd*, 78 F.4th 1326 (11th Cir. 2023). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

In deciding whether probable cause exists, an officer is "not required to sift through conflicting evidence or resolve issues of credibility, so long as the

totality of the circumstances present a sufficient basis for believing that an offense has been committed.  Nor does probable cause require certainty on the part of the police." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002) (citations omitted).  The fact that the arrestee was never prosecuted, or the charges were dropped, or the arrestee was acquitted of any offense stemming from the arrest, does not impact the existence of probable cause.  *Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002).

An officer who makes an arrest or detention without actual probable cause is nonetheless entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest.  When qualified immunity is raised as a defense to false arrest claims, a court asks whether arguable probable cause existed for the arrest.  *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006). "The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (quotations omitted).  Qualified immunity allows ample room for mistaken judgments to prevent officials from erring on the side of caution due to a fear of litigation.  *Id.* at 1446 (quotations omitted).  A court looks to the totality of the circumstances to determine whether arguable probable cause exists.  *Davis*, 451 F.3d at 763.

A plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). To do so, he must show that no reasonably objective police officer would have perceived there to be probable cause based on the totality of the circumstances. *Coffin v. Brandau*, 642 F.3d 999, 1006 (11th Cir. 2011).

The existence of probable cause "constitutes an absolute bar" to a § 1983 claim for false arrest. *Rankin*, 133 F.3d at 1435. "It also is an absolute bar to a false arrest claim under Florida law." *Davis v. City of Apopka*, 734 F. App'x 616, 621 (11th Cir. 2018) (citing *Bolanos v. Metr. Dade Cty.*, 677 So.2d 1005, 1005 (Fla. Dist. Ct. App. 1996)). "The probable cause standard is the same under Florida and federal law." *Id.* (citing *Rankin*, 133 F.3d at 1435).

The Court now turns to the merits. First, the Court addresses Clark's false arrest claim against Deputy Pasztor in his individual capacity. For qualified immunity to apply, the defendant public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *See Fish v. Brown*, 838 F.3d 1153, 1162 (11th Cir. 2016). That established, the court engages in a two-step inquiry: (1) whether, taken in the light most favorable to the plaintiff, the factual allegations show the defendant's conduct violated a constitutional or statutory right; and (2) whether the constitutional or statutory right was clearly established. *See id.*

10

Deputy Pasztor's actions fall within the scope of his discretionary authority. (Doc. 1 ¶¶ 9, 10). Clark does not dispute as much. (*See generally* Doc. 12). So the Court considers whether Deputy Pasztor violated Clark's Fourth Amendment rights.

Clark was arrested for "Obstruction of Any Officer FSS 843.02." (Doc. 8-1 at 1). This Florida statute provides: "Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); . . . personnel or representative of the Department of Law Enforcement; or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083." Fla. Stat. § 843.02.

To convict a person "of resisting or obstructing an officer without violence, the State is required to prove that (1) the officer was engaged in the lawful execution of a legal duty; and (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty." *V.L. v. State*, 790 So. 2d 1140, 1142 (Fla. Dist. Ct. App. 2001). The investigation of a crime by a police officer is an execution of a lawful duty. *Id.* (citing *Francis v. State,* 736 So. 2d 97, 99 n.l (Fla. Dist. Ct. App. 1999)).

First, the Court finds that Deputy Pasztor was engaged in the lawful execution of a legal duty. In the Eleventh Circuit, "[t]he existence of a traffic

violation can provide an officer with arguable probable cause to make an arrest, even though the offense is minor or normally punishable by a monetary citation, and even if the officer had no knowledge of that violation at the time." *Reid v. Henry Cnty., Ga.*, 568 F. App'x 745, 748 (11th Cir. 2014) (citing *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001) (officers permissibly arrested and jailed motorist for fine-only offenses of failing to wear seat belt and failing to fasten children's seat belts); *Virginia v. Moore,* 553 U.S. 164, 166–67, 178 (2008) (upholding arrest for misdemeanor driving-on-a-suspended-license)). Further, "[a]s long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." *Id.* (citing *Lee v. Ferraro,* 284 F.3d 1188, 1196 (11th Cir. 2002); *United States v. Saunders,* 476 F.2d 5, 7 (5th Cir. 1973) (holding that arrest based on marijuana possession was valid even though agents making arrest relied only on charges of harboring and concealing a fugitive, for which there was no probable cause)).

Here, Deputy Pasztor stopped Clark because his vehicle's exhaust system was "extremely loud and louder than the factory or manufacturer's original equipment." (Doc. 8-1 at 1; *see also* Doc. 1 ¶ 17 (Deputy Pasztor "stopped Plaintiff . . . because of an illegal, modified, exhaust, and for 'opening it up on 41'")). Florida law provides that "[e]very motor vehicle shall at all times be equipped with an exhaust system in good working order and in

constant operation, including muffler, manifold pipe, and tailpiping to prevent excessive or unusual noise. . . . A violation of this section is a noncriminal traffic infraction punishable as a nonmoving violation as provided in chapter 318." Fla. Stat. § 316.272(1), (3).

Relatedly, "[n]o person shall modify the exhaust system of a motor vehicle or any other noise-abatement device of a motor vehicle operated or to be operated upon the highways of this state in such a manner that the noise emitted by the motor vehicle is above that emitted by the vehicle as originally manufactured." *Id.* § 316.293(5)(a). Further, "[a] violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation[.]" *Id.* § 316.293(7).

Florida law provides that a law enforcement officer may arrest a person without a warrant when a violation of chapter 316 has been committed in the presence of the officer. Fla. Stat. § 901.15(5). The arrest may be made immediately or in fresh pursuit. *Id.*

In *State v. Cobbs*, the court determined that simply because the defendant was not ultimately arrested or prosecuted for a violation of section 316.272(1), the trial court's finding that the stop for an investigation of that offense was pretextual was "without basis in the law." 411 So. 2d 212, 215 (Fla. Dist. Ct. App. 1982). Thus, *Cobbs* teaches that an officer may arrest a person during a traffic stop for a violation of the exhaust system statutes.

13

Clark does not dispute that he modified his vehicle's exhaust system, which is clearly visible in Deputy Pasztor's body camera footage. (*See generally* Docs. 1, 12). In fact, during the traffic stop, Clark told Deputy Pasztor that he "already got a ticket for it [the modified exhaust system] once." (Pasztor – BWC at 2:39–2:55). In his response, Clark concedes that "it is true that [Deputy Pasztor's] stop of Plaintiff's vehicle was lawful." (Doc. 12 at 4). Accordingly, the modified exhaust traffic violation created sufficient probable cause for an arrest. *See Bristol v. Butts Cnty., Ga.*, No. 5:24-CV-00137-TES-CHW, 2024 WL 3558737, at *8 (M.D. Ga. July 24, 2024) (traffic violation created sufficient probable cause for arrest, obviating the need to determine whether deputy had probable cause to arrest plaintiff for obstruction). Deputy Pasztor was engaged in the lawful execution of a legal duty—initiating a traffic stop based on Clark's modified exhaust system. The traffic violation created sufficient actual probable cause for an arrest, rendering Clark's other arguments meritless. *See id.*

Although Clark agrees that Deputy Pasztor's stop was lawful, in the next breath, he argues that Deputy Pasztor unnecessarily prolonged the stop by engaging Clark in unnecessary conversation. (Doc. 12 at 4–5). For instance, he notes that Deputy Pasztor ordered Clark to stand in front of the cruiser, talked about the type of car Clark drove, and asked Clark whether he knew

how expensive the fine would be for a second offense modified exhaust ticket. (*Id.*)

A traffic stop is analogous to a *Terry* stop. *United States v. Campbell*, 26 F.4th 860, 882 (11th Cir. 2022). Thus, "the scope of the stop must be carefully tailored to its underlying justification." *Id.* (cleaned up, citation omitted). In *Rodriguez v. United States*, 575 U.S. 348, 355 (2015), the Supreme Court identified several tasks it considers "ordinary inquiries incident to the traffic stop." Such tasks include checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at 355.

Unrelated tasks are those aimed at detecting criminal activity more generally. *Campbell*, 26 F.4th at 882 (citing *United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018)). For example, asking about a passenger's gang affiliation is unrelated. *Arizona v. Johnson*, 555 U.S. 323, 332–34 (2009). Using a dog to search for contraband is unrelated. *Rodriguez*, 575 U.S. at 355–56.

Based on the Court's review of Deputy Pasztor's body camera footage, Clark's argument that Deputy Pasztor unlawfully prolonged the traffic stop is a nonstarter. All of Deputy Pasztor's questions related to the traffic stop. Yes, he briefly asked Clark about his car—a Hyundai Genesis—and remarked that he liked cars and Genesises in particular. (Pasztor – BWC at 2:08–2:15). And

15

true, he briefly asked Clark whether he understood the monetary penalties for having a modified exhaust system—one of the main reasons Deputy Pasztor initiated the traffic stop. (Pasztor – BWC at 2:20–2:36). But these inquiries lasted mere seconds, were reasonable, were related, and did not constitute indefinite detention. *See Campbell*, 912 F.3d at 1350. The video shows that Deputy Pasztor asked no questions aimed at detecting criminal activity more generally. And Clark identifies none in his response. (*See generally* Doc. 12). Clark does not even estimate how much time elapsed or cite specific case law for the proposition that Deputy Pasztor's questions or the amount of time of the traffic stop could constitute a prolonged detention. (*Id.*) He merely cites cases generally related to prolonged traffic stops, such as *Rodriguez, Illinois v. Cabballes*, 543 U.S. 405 (2005), and *Campbell*. (Doc. 12 at 4). The videos show that Clark extended the traffic stop by continuing to talk to Deputy Pasztor. (Pasztor – BWC at 2:38–3:45). This stop was not unlawfully prolonged.

Because Deputy Pasztor did not unnecessarily prolong the traffic stop and had actual probable cause to arrest Clark for the modified exhaust system, the Court's inquiry could end here. *See Bristol*, 2024 WL 3558737, at *8 (citing *United States v. Clark*, 32 F.4th 1080, 1089 n.2 (11th Cir. 2022) ("The parties dispute other statutory grounds for the probable cause to arrest, including reckless conduct, obstruction, and fleeing and eluding an officer. Because the traffic violation was sufficient to create probable cause to arrest, we need not

address the other grounds mentioned in the briefs."); *Durruthy v. Pastor*, 351 F.3d 1080, 1090 (11th Cir. 2003) ("While Durruthy was charged with violating only Fla. Stat. § 843.02, Pastor is shielded by qualified immunity so long as she had probable cause to arrest Durruthy for any offense."); *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.")).  Even so, the Court next explains why Deputy Pasztor also had actual probable cause to arrest Clark for resisting an officer without violence.

The Court finds that Clark's actions meet the second prong of the obstruction statute—he obstructed, resisted, and opposed Deputy Pasztor in the performance of his legal duty.  Deputy Pasztor swore in his affidavit that Clark obstructed his lawful discharge of lawful duties as he became "increasingly uncompliant."  (Doc. 8-1).  As Clark stood in front of the police cruiser, Deputy Pasztor asked him for his driver's license and registration.  (Pasztor – BWC at 3:50–3:53).  Clark continued to talk over him.  (Pasztor – BWC at 3:53–4:03).  Clark took out his driver's license, which appears to be attached to a chain that was attached to Clark's pocket, but did not hand it to Deputy Pasztor.  (Pasztor – BWC at 4:03).  Clark continued to ramble about whether he could legally elevate his voice and repeated, "don't touch me, bro."  (Pasztor – BWC at 4:04–4:15).

Deputy Pasztor writes in his affidavit that he observed a knife within Clark's pocket, and he "attempted to detain Clark[,] at which time he pulled his hands away from [Deputy Pasztor] and told [him] not to touch him." (Doc. 8-1 at 1.) Critically, Deputy Pasztor then advised Clark that he was "resisting and to stop resisting." (*Id.*; Pasztor – BWC at 4:28–4:31). Additionally, the body camera footage shows that Clark refused to give Deputy Pasztor his arm. He directed Clark to give him his arm and place it behind his back. (Pasztor – BWC at 4:45–4:50). Clark held his arm at his side while Deputy Pasztor held his wrist. (Pasztor – BWC at 4:55). Deputy Pasztor repeated that Clark was "physically resisting [him]." (Pasztor – BWC at 5:00–5:03). He asked Clark to give him his hands. (Pasztor – BWC at 5:12). But Clark continued to hold his hands on the car and at his sides. (Pasztor – BWC at 5:24–5:30).

At about 5:33, Deputy Pasztor's body worn camera drops to the ground. The visual image is of the pavement, but the audio remains clear. At about 6:50, Deputy Pasztor picks up his body worn camera, and the visual image is clear again at about 7:00. The minute and a half that the camera was on the ground does not affect the Court's analysis or conclusion, as Clark's resistance occurred for several minutes before Deputy Pasztor dropped the camera.

On the papers, Clark barely puts up a fight. (Doc. 12). His response contains mere boilerplate statements of the law with no analysis. (*See* Doc. 12 at 5–6). He conclusorily states, "[v]iewing the facts most favorably to Plaintiff,

a reasonable officer in the same circumstances as PASZTOR could not have believed that probable cause, not even arguable cause, existed to arrest Plaintiff." (*Id.* at 6). Based on the totality of the circumstances, the Court easily finds that Deputy Pasztor had actual probable cause to arrest Clark for resisting an officer without violence.

Because Deputy Pasztor had actual probable cause to arrest Clark, he is shielded by qualified immunity with respect to Clark's § 1983 claims. Having found no constitutional violation, the Court need not address the clearly established prong of the qualified immunity analysis. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) ("We may decide these issues in either order, but, to survive a qualified-immunity defense, the plaintiff must satisfy both showings.") (citation and internal alterations omitted). Thus, the Court grants this portion of the motion to dismiss and dismisses Clark's § 1983 claim for false arrest.

Clark also purports to bring the § 1983 claim for false arrest against Deputy Pasztor in his official capacity. This claim fails for several reasons. First, Defendants correctly point out that "[t]o the extent [Deputy Pasztor] is named in his official capacity, such claims are merely another way of pleading an action against the entity of which the deputy is an agent, *i.e.*, the Sheriff of Collier County." (Doc. 8 at 12 (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991))). Defendants also emphasize that there are no allegations

of any policy, practice, or custom of Sheriff Rambosk that caused a violation of Clark's constitutional rights.  (*Id.* at 22, 23).  *See Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) ("to impose municipal liability under § 1983, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.").  Clark's official capacity claim fails for those reasons.

Something else dooms his claim.  "There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")).

Because Deputy Pasztor had actual probable cause for Clark's arrest, there is no underlying constitutional violation.  Therefore, as a matter of law, there can be no supervisory or *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), liability.  *See Reid*, 568 F. App'x at 749 (because the plaintiff did not suffer a constitutional deprivation, he could not recover from the County under section 1983); *Davis,* 734 F. App'x at 621 (claims

against the City may be dismissed only if the officers had actual probable cause, a higher standard); *Bristol*, 2024 WL 3558737, at *14 (citing *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (holding that "in the absence of a constitutional deprivation," a plaintiff cannot "sustain a cause of action . . . under [§] 1983")). Thus, the Court grants this portion of the motion to dismiss and dismisses Clark's official capacity claim.

The Court turns to Clark's First Amendment retaliation claim against Deputy Pasztor. "[I]t is now settled law that there is probable cause for a warrantless custodial arrest even for a seemingly insignificant crime." *Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Because the Court has found that Deputy Pasztor had actual probable cause for Clark's arrest, it follows that he is entitled to qualified immunity on Clark's First Amendment retaliation claim under § 1983. *See Andrews v. Marshall*, No. 216CV814FTM99MRM, 2019 WL 11638833, at *5 (M.D. Fla. May 8, 2019), *aff'd*, 845 F. App'x 849 (11th Cir. 2021) (citing *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) ("[W]hen an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest.").

The same pleading failures apply to Clark's First Amendment official capacity claim as his Fourth Amendment claim. But whether he could cure

these pleading deficiencies is moot. As explained above, because the Court concludes no constitutional violation occurred, no official capacity claim can follow. Thus, the Court grants this portion of the motion to dismiss and dismisses Clark's First Amendment retaliation claim under § 1983.

Finally, the Court addresses the state-law claims. For the same reasons that actual probable cause bars Clark's § 1983 false arrest claim, his state-law false arrest claim against Sheriff Rambosk is also barred. *See Davis*, 734 F. App'x at 621. Thus, his state-law false arrest claim is dismissed.

In his response, Clark withdraws Claim 2 (state-law battery against Sheriff Rambosk) and Claim 3 (state-law intentional infliction of emotional distress against Deputy Pasztor). (Doc. 12 at 5). Thus, his battery and intentional infliction of emotional distress claims are also dismissed.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss Complaint (Doc. 8) is **GRANTED**.

2. Claim 1 (state-law false arrest against Sheriff Rambosk), Claim 4 (Section 1983 false arrest against Deputy Pasztor in his individual and official capacities), and Claim 5 (Section 1983 First Amendment retaliation against Deputy Pasztor in his individual and official capacities) are **DISMISSED with prejudice**.

3. Claim 2 (state-law battery claim against Sheriff Rambosk), and Claim 3 (state-law intentional infliction of emotional distress claim against Deputy Pasztor in his individual and official capacities) are **DISMISSED without prejudice**.[4]

4. The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 24, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[4] Because Clark withdrew the only two claims that have been dismissed without prejudice, the Court concludes that it need not analyze whether it should exercise supplemental jurisdiction.